```
              IN THE UNITED STATES DISTRICT COURT
               FOR THE SOUTHERN DISTRICT OF OHIO
                         EASTERN DIVISION
```

Rick Dale Fannin,                :

    Plaintiff,                :

  v.                             :    Case No. 2:13-cv-1097

                                         :    JUDGE EDMUND A. SARGUS, JR.
Commissioner of Social Security,      Magistrate Judge Kemp
                                         :
    Defendant.

## REPORT AND RECOMMENDATION

### I.  Introduction

Plaintiff, Rick Dale Fannin, filed this action seeking review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits.  That application was filed on January 22, 2010, and alleged that Plaintiff became disabled on January 1, 1993.  He later amended that onset date to March 31, 2007.

After initial administrative denials of his claim, Plaintiff was given a video hearing before an Administrative Law Judge on January 20, 2012.  In a decision dated February 10, 2012, the ALJ denied benefits.  That became the Commissioner's final decision on September 10, 2013, when the Appeals Council denied review.

After Plaintiff filed this case, the Commissioner filed the administrative record on January 17, 2014.  Plaintiff filed his statement of specific errors on March 10, 2014, to which the Commissioner responded on June 12, 2014.  No reply has been filed, and the case is now ready to decide.

### II.  Plaintiff's Testimony at the Administrative Hearing

Plaintiff, who was 58 years old at the time of the

administrative hearing and who has a high school education, testified as follows.  His testimony appears at pages 34-59 of the administrative record.

The ALJ first asked Plaintiff about a plastic boot he wore to the hearing.  He testified that the purpose of the boot was to keep his weight off an ulcer on the bottom of his foot.  Four toes had been amputated from that foot, and he had also had some surgery (but no amputations) on his right foot.  He used a cane for balance in slippery conditions.

Plaintiff said he was able to drive, and drove once or twice a week to the store or to medical appointments.  He last worked as a temporary worker during the 2010 census, either supervising a crew or going door-to-door himself.  Before that, he ran a home-based computer business which involved buying and reselling computers.  He also did computer repairs.  He was winding down that business by 2007.  In the late 1990s, he worked for Owens Corning as a maintenance technician.  He lost that job in a corporate downsizing.

The major problems which, in Plaintiff's view, prevented him from working were constant fatigue, being unable to walk or sit for long periods of time, loss of concentration, and pain in his right shoulder.  The fatigue stemmed from his diabetes and the 23 different medications he was taking.  Due to the foot ulcers, he had been advised to stay off his feet as much as possible.  Usually, he sat with his feet elevated, again based on his doctors' advice.  If he was particularly active on a day (such as the day he attended the hearing), he would need a day or two of rest to recover.  He also experienced constant aching and numbness in his feet.

### III.  The Medical Records

The medical records in this case are found beginning on page 260 of the administrative record.  The pertinent records can be

summarized as follows.

As early as 2004, Plaintiff was diagnosed with left foot pain due to diabetes. His big toe was gangrenous, and it was subsequently amputated. He developed another infection in 2005 which led to the amputation of a second toe. A 2006 note shows both ulceration on Plaintiff's right foot and chronic ulceration of the left foot. That note was copied to Dr. Carroll. Dr. Carroll also made a treatment note in October, 2006, diagnosing right foot diabetic foot ulcer with cellulitis, left foot diabetic foot ulcer with cellulitis and possible abscess, and diabetes. He recommended continued chemotherapy for infection and local debridement. (Tr. 309-11). Dr. Doolittle subsequently amputated the fourth toe on the left foot due to infection. Records of treatment well after Plaintiff's last insured date of March 31, 2007 show additional care by Dr. Doolittle with continuing diagnoses of diabetic ulcers on both feet.

Dr. Doolittle filled out a form on February 23, 2010, noting that he had treated Plaintiff beginning in 2004 and that his diagnoses were right shoulder strain, foot ulcers, and diabetes. He said Plaintiff's feet occasionally drained and required debridements. At the most recent examination, in 2009, Plaintiff's feet were healed. He described Plaintiff's response to both foot surgery and a shoulder injection as "excellent." Finally, he indicated Plaintiff was able to perform work-related activities. (Tr. 427-29).

Dr. McCloud, a state agency reviewer, completed a residual functional capacity form on May 12, 2010, which he amended the following day. The limitations he found were a restriction to light work, with standing and walking to consist of no more than half the workday and then only for 60 minutes at a time, and only occasional operation of foot controls bilaterally. Plaintiff was also limited in his overhead reaching and could not be exposed to

hazards. (Tr. 434-42). That assessment was confirmed by Dr. Holbrook. (Tr. 443).

Finally, in 2011, Dr. Carroll, who also submitted a number of office notes from 2007, completed a residual functional capacity form which asked him to assess Plaintiff's functional capacity as of March 31, 2007. He indicated that Plaintiff required oral narcotics which produced drowsiness. In his view, Plaintiff could walk one to two blocks, could sit for only fifteen minutes at a time and for no more than two hours in a workday, could stand for the same lengths of time, would need frequent breaks, would be off task 25% of the time, had to avoid extreme environmental conditions, could not tolerate even low work stress, and would miss more than four days per month due to his condition. (Tr. 537-40).

### IV. The Vocational Testimony

Cindy Burnett was the vocational expert in this case. Her testimony begins on page 59 of the administrative record.

Ms. Burnett testified that the census worker job which Plaintiff had done was light and unskilled. When he did his home computer job, he was working at a skilled, medium position. The maintenance technician job was also skilled but performed at the heavy exertional level.

Ms. Burnett was then asked some questions about a hypothetical person who was 53 years old and had Plaintiff's educational and work history. That person could work at the sedentary level with limits on how often he or she could push, pull, or operate foot controls with the left foot, and needed to avoid working around unprotected heights or dangerous moving machinery. Also, the person could not be exposed even moderately to extremes of temperature, humidity, or wetness. She testified that someone with those limitations could not do any of Plaintiff's past jobs. However, the skills involved in doing

electronics repair would transfer to some sedentary jobs such as semiconductor assembler. 1,300 of those jobs exist in Ohio, and there are 42,000 such positions nationally. The person could also do the job of hearing aid repairer, service dispatcher, or troubleshooter.

Ms. Burnett was then asked if someone who could work at the sedentary level but needed a sit/stand option with a frequency of fifteen minutes and who had to take unscheduled breaks and elevate their feet for 25% of the day could work competitively. She said no. The same held true for someone off task 25 percent of the time or who would miss four days per month due to illness.

V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 13-23 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that Plaintiff last met the insured status of the Social Security Act on March 31, 2007. Second, Plaintiff had engaged in substantial gainful activity from January, 1993, through December, 1998, and from January through December, 2004. As far as Plaintiff's impairments are concerned, the ALJ made two separate findings. First, he found that Plaintiff had no medically determinable impairment for the period from January, 1993 through December, 2003. Next, he found that from January 1, 2004 through March 31, 2007, Plaintiff had severe impairments including obesity, diabetes, peripheral neuropathy, chronic foot ulcers, multiple toe amputations, and peripheral vascular disease. The ALJ also found that these impairments did not, at any time, meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the residual functional

capacity to perform work at the sedentary exertional level but he could only occasionally push, pull, or operate foot controls with his left leg or foot, and he had to avoid unprotected heights, dangerous moving machinery, and moderate exposure to extreme cold, heat, high humidity, and high wetness.  He could not work around hazards such as unprotected heights or dangerous machinery.  The ALJ found that, with these restrictions, Plaintiff could not perform his past relevant work, but he could do those jobs identified by Ms. Burnett, and that those jobs existed in significant numbers in the national economy.  Consequently, the ALJ concluded that Plaintiff was not entitled to benefits.

VI.   Plaintiff's Statement of Specific Errors

In his statement of specific errors, Plaintiff raises these issues: (1) the ALJ did not properly evaluate the opinions of the treating physician, Dr. Carroll; and (2) the ALJ did not properly evaluate Plaintiff's credibility.  The Court analyzes these claims under the following standard.

Standard of Review.  Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Company v. NLRB, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'" Id.  LeMaster v. Weinberger, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  Harris v. Heckler, 756 F.2d 431, 435 (6th Cir. 1985); Houston v. Secretary, 736 F.2d 365, 366 (6th Cir. 1984); Fraley v. Secretary, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is

supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)); Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir. 1985).  Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence.  Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983).

### A.  Dr. Carroll's Opinions

Clearly, the limitations set forth in Dr. Carroll's residual functional capacity evaluation are not consistent with being employed, and the vocational expert so testified.  The ALJ did not accept Dr. Carroll's evaluation.  The first question raised by the statement of errors is whether he had good reasons, supported by the record, for discounting Dr. Carroll's opinions.

The Court begins its analysis by examining the ALJ's decision closely to see what reasons the ALJ gave when he decided not to give controlling or significant weight to Dr. Carroll's views.  Here is what he said:

> Little weight is ... given to the opinion of Dr. Fred Carroll, another of the claimant's long-term treating physicians, that he would have been absent more than 4 days per month and would not have been able to sustain even low stress work prior to his date last insured.... While the undersigned notes that the form completed by Dr. Carroll indicates the assessment related to the period before the date last insured, Dr. Carroll did not complete the form until July 2011.  The undersigned finds it improbable that this provider was able to accurately capture the claimant's residual functioning four (sic) earlier.  In addition, the records described above regarding the relevant time period document relatively few acute episodes requiring surgical intervention, and document only 1 extended hospitalization.  Between these acute episodes, the claimant received little treatment, and the few

> treatment records included in his file do not document severe problems between these acute episodes.  This evidence simply does not support likely frequent monthly absences during the relevant time period as Dr. Carroll noted apparently using hindsight.  Indeed, the claimant was able to work in a self-employed position performing computer work and earning over $14,000 in 2004.  Further, while the undersigned finds Dr. Carroll's assessment of limitations in lifting, standing, and walking accurate, no records document limitations in sitting or suggest the claimant had to change positions frequently or had to elevate his legs outside acute episodes of ulceration.

(Tr. 20-21).

Plaintiff contends that in his decision, the ALJ "completely failed to evaluate Dr. Carroll's opinions about the work-limiting aspects of [Plaintiff's] impairments according to the requirements of  Wilson [v. Comm'r of Social Security, 378 F.3d 541 (6th Cir. 2004)], Rogers [v. Comm'r of Social Security, 486 F.3d 234 (6th Cir. 2007)], 20 C.F.R. §404.1527, and SSR [Social Security Regulation] 96-7p."  Statement of Errors, Doc. 11, at 9. He argues that the ALJ did not consider the §404.1527(c) factors and had no basis for concluding that Dr. Carroll could not accurately recount his patient's condition four years after the fact.  He also asserts that the ALJ improperly substituted his own medical judgment for that of the treating source.

It has long been the law in social security disability cases that a treating physician's opinion is entitled to weight substantially greater than that of a nonexamining medical advisor or a physician who saw plaintiff only once.  20 C.F.R. §404.1527(d); see also Lashley v. Secretary of H.H.S., 708 F.2d 1048, 1054 (6th Cir. 1983); Estes v. Harris, 512 F.Supp. 1106, 1113 (S.D. Ohio 1981).  However, in evaluating a treating physician's opinion, the Commissioner may consider the extent to which that physician's own objective findings support or contradict that opinion.  Moon v. Sullivan, 923 F.2d 1175 (6th

Cir. 1990); Loy v. Secretary of HHS, 901 F.2d 1306 (6th Cir. 1990). The Commissioner may also evaluate other objective medical evidence, including the results of tests or examinations performed by non-treating medical sources, and may consider the claimant's activities of daily living. Cutlip v. Secretary of HHS, 25 F.3d 284 (6th Cir. 1994). No matter how the issue of the weight to be given to a treating physician's opinion is finally resolved, the ALJ is required to provide a reasoned explanation so that both the claimant and a reviewing Court can determine why the opinion was rejected (if it was) and whether the ALJ considered only appropriate factors in making that decision. Wilson v. Comm'r of Social Security, 378 F.3d 541, 544 (6th Cir. 2004).

   The Commissioner defends the ALJ's determination, arguing that the records which demonstrated routine treatment, few severe episodes requiring hospitalization, and significant treatment gaps support the determination that Dr. Carroll's opinions were overly restrictive. The Commissioner also cites to the evidence that Plaintiff was able to work at the substantial gainful activity level in 2004, and did some part-time work in 2009 and 2010, as being factors the ALJ could reasonably consider. The Commissioner also argues that Dr. Carroll's opinion was inconsistent with certain activities of daily living in which Plaintiff had engaged, such as riding a motorcycle, driving, and doing household chores, and that it was contradicted by the opinions of the state agency physicians.

   The paragraph quoted above concerning Dr. Carroll's opinion must be read in the context of the ALJ's extended discussion about why he found Plaintiff to be capable of sedentary work. In that discussion, the ALJ amplifies on the significance of the treatment record, noting that Plaintiff had no treatment at all from February 4, 2004 to December, 2005; that his condition, although it required hospitalizations in 2005 and 2006, was

-9-

stabilized with medication; that the only record existing between the October, 2006 hospitalization and the last insured date showed that Plaintiff was doing well; that Plaintiff was able to work part-time in 2009 and 2010, including being on his feet for work; that Plaintiff testified he could walk 100 yards and be on his feet for an hour; and that Plaintiff was able to drive and ride a motorcycle as late as three years after his last insured date. (Tr. 19-20).

Considering the administrative decision in its entirety, it does not appear that the Commissioner had a valid basis for speculating that Dr. Carroll could not accurately recall Plaintiff's physical condition as it existed four years before he did his evaluation, nor does Plaintiff's ability to operate his home business successfully in 2004 shed much light on his physical capabilities in 2007. Even if these factors are disregarded, however, the ALJ was still entitled to focus on the treatment records and how they related to the residual functional capacity expressed by Dr. Carroll. Consistency between a treating source opinion and other evidence in the record is one of the pertinent decisional factors listed in §404.1527(c); subsection (4) of that regulation states that "the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion." See also Fisher v. Astrue, 2010 WL 3069506, *6 (N.D. Ohio June 10, 2010)("An ALJ is not bound by the conclusory statements of doctors, including those of treating physicians. This is particularly true when the treating physician's opinions are unsupported by sufficient clinical or diagnostic findings and inconsistent with other reliable evidence"), adopted and affirmed 2010 WL 3069505 (N.D. Ohio Aug. 2, 2010). This Court has similarly held that "a treating source opinion which is 'out of proportion to the objective findings' may be substantially discounted." Louderback v. Comm'r of Social Security, 2014 WL 2738145, *6 (S.D. Ohio June 16, 2014), adopted

and affirmed 2014 WL 4384249 (S.D. Ohio Sept. 3, 2014) , quoting Armstrong v. Astrue, 2012 WL 380131, *7 (S.D. Ohio Feb. 6, 2012), adopted and affirmed 2012 WL 1806137 (S.D. Ohio May 17, 2012).

As the ALJ correctly observed, the treatment notes do not support either the proposition that Plaintiff would miss work more than four days each month on a consistent basis or that he had to elevate his legs a significant amount of the time even when his feet were relatively ulcer-free. The fact that he could later do a part-time job which required standing or walking for some part of the workday contradicts this latter restriction. There is also no explanation in the records or in Dr. Carroll's opinion as to why Plaintiff would be off task for 25% of the day, nor why he could sit for only two hours at a time. Consequently, there is a lack of consistency between Dr. Carroll's opinions and the record as a whole which the ALJ could legitimately rely on as a basis for discounting Dr. Carroll's views.

Plaintiff argues that the ALJ did not cite to other regulatory factors in his decision, including the length of the treatment relationship. However, "there is no requirement that the ALJ address each of the §404.1527(c) factors in her opinion." Machiele v. Commissioner of Social Sec., 2014 WL 4080240, *1 (W.D. Mich. Aug, 18, 2014). The "articulation requirement" found in §404.1527(c) is satisfied if the ALJ's decision is "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. The ALJ's decision in this case meets that requirement, and it is not evident from the record either that the ALJ actually failed to consider the various §404.1257(c) factors or that he disregarded significant evidence concerning these factors. Under these circumstances, the Court finds no error in the way in which the ALJ dealt with Dr. Carroll's opinion.

B.  The Credibility Determination

Plaintiff's second argument is that the ALJ did not properly determine his credibility.  He bases this argument on, first, the ALJ's allegedly improper rejection of Dr. Carroll's opinion, and, second, on the ALJ's failure to consider both the statements of the state agency physicians that Plaintiff's statements were credible and the evidence that Plaintiff suffered from medication side effects, needed to keep his feet elevated, and was symptomatic between documented instances of treatment.  In response, the Commissioner argues that the ALJ made reasonable determinations on all of these factors.

It is also the law that a social security ALJ is not permitted to reject allegations of disabling symptoms, including pain, solely because objective medical evidence is lacking.  Rather, the ALJ must consider other evidence, including the claimant's daily activities, the duration, frequency, and intensity of the symptoms, precipitating and aggravating factors, medication (including side effects), treatment or therapy, and any other pertinent factors.  20 C.F.R. §404.1529(c)(3).  Although the ALJ is given wide latitude to make determinations about a claimant's credibility, the ALJ is still required to provide an explanation of the reasons why a claimant is not considered to be entirely credible, and the Court may overturn the ALJ's credibility determination if the reasons given do not have substantial support in the record.  See, e.g. Felisky v. Bowen, 35 F.3d 1027 (6th Cir. 1994).

The Court has already addressed the primary contention Plaintiff makes about credibility; since the ALJ had substantial reasons for discounting Dr. Carroll's opinions, to the extent those opinions provided support for Plaintiff's credibility, the ALJ was entitled to discount Plaintiff's testimony for the same reasons.  Beyond that, the ALJ cited to evidence about Plaintiff's work activity even after his last insured date, the

fact that he could perform household chores, the lack of treatment for long periods of time, and the lack of documentation about some of Plaintiff's complaints.  The ALJ did accept his statements about side effects to the extent they prohibited work around hazardous machinery or unprotected heights.  All of these reasons find substantial support in the record, and the ALJ explained them adequately.  On this record, that is not a decision that the Court can second-guess.  See, e.g., Gooch v. Sec'y of HHS, 823 F.2d 589, 592 (6th Cir. 1987)(a court "will not normally substitute [its] impressions on the veracity of a witness for those of the trier of fact").

## VII.  Recommended Decision

Based on the above discussion, it is recommended that the Plaintiff's statement of errors be overruled and that judgment be entered in this case in favor of the Defendant Commissioner of Social Security.

## VIII.  Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions  of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                          /s/ Terence P. Kemp
                                          United States Magistrate Judge